NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-812

COMMONWEALTH

vs.

CHRISTOPHER J. CLAYTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Christopher J. Clayton, was charged with one count of possessing child pornography in violation of G. L. c. 272, § 29C.  The Commonwealth appeals from an order of a District Court judge suppressing evidence that police discovered while executing a search warrant.[1]  The Commonwealth argues that the search of the defendant's cell phone was permissible because it was performed pursuant to a valid search warrant.  We agree and reverse.

Background.  As the judge did not make any findings of fact, we summarize the relevant facts from the affidavit

---

[1] The Commonwealth also appeals from the judge's denial of its motion to reconsider.  In light of our ruling, we need not reach that issue.

submitted by State police Trooper Gerald F. Donovan in support of his application for a search warrant. Donovan has been a State police trooper since 2006 and has worked as a member of the State police Internet crimes against children (ICAC) task force since around 2013. He investigates the sexual exploitation of children where computers or technology are used in the commission of the crime. He has received specialized ICAC training including training on crimes associated with child sexual exploitation.

In December 2021 and January 2022, Donovan received reports from the National Center for Missing and Exploited Children[2] of six digital uploads of images containing suspected child pornography from Snapchat, Dropbox, and Kik accounts. Donovan viewed the images and, based on his training and experience, believed the images were of child pornography. Donovan was provided Internet protocol (IP) addresses, e-mail addresses, and usernames associated with the uploading of the child pornography, and the date of birth associated with one of the user accounts. The usernames from the Snapchat and Dropbox contained variations of the name "Chris." Next, with the

---

[2] The report was from the "CyberTipline," a national clearinghouse for tips and leads regarding sexual exploitation of children. It permits the public as well as electronic service providers to submit online reports of potential child exploitation media. These reports are then provided to law enforcement.

assistance of the Office of the Attorney General, administrative subpoenas were issued to Comcast, an Internet service provider, for the subscriber information linked to the IP addresses. Comcast's records identified a person (not the defendant) as the subscriber for the designated IP addresses and provided a service address of a residence in Marion (residence). The subpoenaed IP addresses matched the IP addresses listed in the CyberTipline reports from the Snapchat, Dropbox, and Kik accounts. As part of his investigation, Donovan submitted a query to the registry of motor vehicles and learned that, in addition to the Internet subscriber, five additional adults may have been living at the residence. After speaking with members of the Marion police department, Donovan learned that the defendant was also associated with the residence.[3]

On February 8, 2022, Donovan applied for a search warrant for any computers, cell phones, or digital devices at the residence, and for evidence related to child pornography. In his affidavit, Donovan averred that a person who possesses child pornography often keeps the images secreted but "readily at hand" and that the images are often copied and stored on computer hard drives and digital devices such as cell phones and

---

[3] Donovan drove to the residence, but the home was set back from the street, and he was unable to observe the residence without driving down a long driveway.

3

tablets.  Based on Donovan's training and experience, he opined that a collector of child pornography materials is unlikely to destroy or delete them.  Donovan stated that today's computers and digital devices are smaller in design and portable, allowing a person to more easily transport their electronics, and that these items would likely be carried on the person or found in the person's residence or motor vehicle.  The affidavit specifically identified and named seven adult occupants of the residence, including the defendant, along with their corresponding dates of birth.  It requested a warrant allowing the search and seizure of "the items at the residence and/or property occupied" by the seven named adults for evidence of possession and dissemination of child pornography.  Finally, the affidavit sought permission to seize and search any digital devices including cell phones of the persons present at the residence during the search.[4]

Members of the State police executed the search warrant the same day it was granted and seized the defendant's cell phone. A subsequent search of the defendant's cell phone revealed two video recordings containing child pornography, and he was

---

[4] Donovan also specifically requested permission for a forensics expert to search the computer system at the residence and to copy digital evidence stored on any servers.

4

charged with one count of possession of child pornography in violation of G. L. c. 272, § 29C.

The defendant filed a motion to suppress the evidence obtained from executing the search warrant. A District Court judge allowed the motion to suppress, stating in a margin notation that "the seizure of the def[endant's] property was lawful, however the search of the phone was without probable cause and therefore unlawful." The Commonwealth promptly filed a motion for clarification and reconsideration. The judge denied the motion and, again in a margin notation, stated, "The court finds that probable cause exists to seize the defendant's phone while at the target address. However, there is insufficient information giving probable cause to search the contents of the seized phone. Motion is denied."

The Commonwealth filed this interlocutory appeal,[5] arguing that the judge was correct in upholding the initial seizure of the defendant's cell phone but that he erred in finding that the subsequent search of the defendant's cell phone was not supported by probable cause. The defendant argues the inverse -- that the cell phone search did lack probable cause, but also that the initial seizure was unlawful because there was an

_____

[5] The Commonwealth filed an application for leave to appeal before the single justice of the Supreme Judicial Court, which was granted on May 28, 2024.

5

insufficient nexus linking the defendant's cell phone to the suspected criminal activity at the residence.[6]

Discussion. The sole issue to be decided in this appeal is whether probable cause existed for the police to search the defendant's cell phone for evidence of child pornography. It is well settled that our review of whether a search warrant was supported by probable cause is limited to the four corners of the affidavit. See Commonwealth v. Snow, 486 Mass. 582, 586 (2021). An affidavit supporting a search warrant should be interpreted "in a commonsense and realistic fashion," and the affidavit should be "read as a whole, not parsed, severed, and subjected to hypercritical analysis" (citation omitted). Commonwealth v. Molina, 476 Mass. 388, 394 (2017). "Whether an affidavit supplied probable cause is a fact-intensive inquiry" and the supporting affidavit must establish "a sufficient nexus between the suspected criminal activity, the items sought, and the place to be searched" (quotations and citations omitted).

---

[6] On appeal, the Commonwealth's only argument is that, because the judge found that the seizure of the defendant's cell phone was lawful, the subsequent search of that phone was also permissible pursuant to the warrant and did not require an additional warrant. The defendant did not file a cross appeal challenging the judge's decision that the seizure of the defendant's cell phone was lawful and therefore his arguments challenging the seizure of the cell phone are not properly before us. See Superintendent of Pub. Works of Attleboro v. Attleboro Contributory Retirement Bd., 38 Mass. App. Ct. 130, 132 n.6 (1995).

Commonwealth v. Dunn, 494 Mass. 42, 48 (2024). Because the determination of probable cause is a conclusion of law, our review of the search warrant affidavit is de novo. See Commonwealth v. Camuti, 495 Mass. 630, 637 (2025).

In determining whether the affidavit in support of the search warrant in this case established probable cause, the cases of Molina, 476 Mass. 388, and Commonwealth v. Martinez, 476 Mass. 410 (2017), are instructive. In Molina, supra at 390-391, members of the State police determined that images of child pornography were being sent and received through a computer connected to an IP address. Police officers then learned that the IP address was assigned to an Internet subscriber at an apartment where the police saw a mailbox with five names on it, including the defendant in that case. Id. at 391. A search warrant was issued which authorized the police to search the apartment for electronic devices contained in the apartment but did not name any person to be searched. Id. During the execution of the search warrant, police saw a computer located in the defendant's bedroom displaying downloads and uploads of child pornography files in progress.[7] Id. at 391-392.

---

[7] The police seized the defendant's laptop computer, and a subsequent search revealed over one hundred files containing suspected child pornography. Id. at 393.

7

In rejecting the defendant's argument that the search warrant was overbroad because the apartment was the shared living space of several occupants, the court noted that the Fourth Amendment "protects people, not places" against unreasonable searches and seizures (citation omitted).  Id. at 394.  However, the court acknowledged that "warrants authorize the searches of particular places, and do so properly wherever there is a sufficient nexus between the items sought and the place to be searched."  Id.  "That nexus may be based on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide evidence of the crime."  Id.  The Molina defendant argued that the nexus was insufficient because, although the police had information about child pornography at the apartment, they had no information about the individuals residing at the apartment and had no information about the electronic devices.  Id. at 395.  The court rejected the notion that the focus of the probable cause inquiry was on the occupants of the apartment.  Id.  Rather, probable cause is supported "where the warrant appropriately substantiated a connection between the apartment and the evidence of child pornography reasonably expected to be located therein."  Id.  The court also rejected the argument that the search warrant was unlawful because it allowed the police to

8

seize "all computing devices found in the apartment regardless to whom they belonged to or where they may have been found." Id. at 396. Because evidence of child pornography could be easily transferred from one device to another, the police did not have to limit their search, and the seizure of over a dozen electronic devices found in the apartment, including the defendant's computer, was lawful. Id. at 396-397.

In Martinez, 476 Mass. at 412-413, police officers discovered that a particular IP address was used to share child pornography and, on further investigation, learned the name of the Internet subscriber and the specific apartment associated with the IP address. Police went to the apartment and discovered that another person (not the Internet subscriber) leased the apartment. Id. at 413. Based on this information, a police officer sought and received a search warrant to search the apartment for computers and related items connected to child pornography. Id. During the execution of the search warrant, police discovered two laptop computers located underneath a basket of laundry. Id. A subsequent search of the computers resulted in the discovery of child pornography files on one of the defendant's laptop computers. Id. at 413-414.

The court rejected the defendant's argument that the search warrant affidavit lacked probable cause because the named Internet subscriber was not confirmed to be living in the

9

apartment and police had no information linking the defendant to the apartment.  Id. at 414.  The affidavit that "averred that a particular IP address was used to share child pornography and that this IP address had been assigned at the time in question to an Internet subscriber at the specific physical address to be searched" was sufficient to establish probable cause to search the apartment.  Id.  A sufficient nexus existed between the suspected criminal activity (child pornography), the items sought (computers), and the location to be searched (apartment), even though the named Internet subscriber was not listed or confirmed to be living at the apartment and even though the defendant was not linked to the apartment.  Id. at 415-416.  "A showing of probable cause to search a place (as opposed to arrest a person) need not identify a specific criminal suspect -- although frequently it does."  Id. at 419.  While acknowledging that a sufficient nexus may be easier to prove if the police link a specific person to the criminal activity, the court reasoned that probable cause does not require the identity of the specific criminal suspect.  Id.  "[T]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."  Id., quoting Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).

10

Here, in his brief, the defendant acknowledges that, in the context of a search warrant affidavit for child pornography, Martinez and Molina "unqualifiedly" create authority to seize and search any device and any person present at a search location based on computer activity linked to that physical address. In an attempt to distinguish Martinez and Molina, the defendant argues that the facts in this case are different because the item seized was located on the defendant's person and because Martinez and Morales each involved an ongoing violation of the law using a peer-to-peer network. We are not persuaded that these distinctions result in a different outcome. Here, the search warrant established a sufficient nexus between the crimes of possession and dissemination of child pornography, the items sought, and the place to be searched.

While it is true, as it was in Martinez, 476 Mass. at 419, that the police did not have any specific information that the defendant possessed child pornography or that the defendant was the individual who used the IP address in question -- here, to upload child pornography from the Snapchat and Dropbox accounts under usernames that included some variation of the name "Chris" -- those facts do not invalidate probable cause. This is because the proper focus of the probable cause analysis is not whether the defendant possessed child pornography but whether the address associated with the IP address likely contained

11

evidence of criminal activity.  See Martinez, 476 Mass. at 417.

The affidavit sufficiently established that child pornography

was uploaded from a device connected to a specific IP address

and that the IP address was registered to a particular

residence.[8]  Thus, the search warrant properly permitted the

search of the entire residence associated with the IP address

for any evidence of child pornography.[9]

---

[8] Two of the accounts used to upload the child pornography were associated with usernames containing the name "Chris," and the defendant, Christopher Clayton, was associated with the residence to which the IP addresses that the child pornography was uploaded with were registered.

[9] Even though the judge determined that the seizure of the defendant's cell phone was supported by probable cause, the defendant now argues that the search of his person (and the subsequent seizure of his cell phone) was unlawful as an "any persons present" search.  We again note that the defendant did not file a cross appeal challenging the judge's conclusion that the seizure of the defendant's cell phone was lawful, and, as such, this issue is not properly before us.  We also note that Commonwealth v. Brown, 68 Mass. App. Ct. 261 (2007), a drug distribution case on which the defendant relies, is distinguishable.  There, we held that the "any persons present" clause of the warrant could not stand because the affidavit described controlled buys that occurred entirely outside the apartment and did not suggest that there were "visitors to the apartment who came and went in ways indicative of criminal activity within."  Id. at 267.  Here, in contrast, the affidavit established probable cause that the electronic devices inside the residence contained child pornography, identified multiple adults, including the defendant, associated with the residence, and contained information that the child pornography that was downloaded was connected to an account holder using the name "Chris."  Because cell phones are devices capable of storing and disseminating child pornography, and are routinely carried on one's person, and evidence, in the form of electronic files, could be easily transferred between electronic devices at the

12

In conclusion, interpreting the search warrant affidavit in "a commonsense and realistic fashion" the police could both seize the electronic devices and then search them for evidence of child pornography. Molina, 476 Mass. at 394. Thus, the police acted lawfully pursuant to the search warrant when they examined the defendant's cell phone for evidence of child pornography.

> Order entered January 25, 2024, reversed.
>
> By the Court (Blake, C.J., Shin & Walsh, JJ.[10]),
>
> Clerk

Entered: July 14, 2025.

---

location, a sufficient nexus existed between the suspected crime and the defendant's person as a place to be searched.

[10] The panelists are listed in order of seniority.